# STATE OF MICHIGAN

# COURT OF APPEALS

GABRIELLE BAKER,

Plaintiff-Appellee,

v

JAMES JOHN BAKER,

Defendant-Appellant.

UNPUBLISHED
January 3, 2019

No. 341480
Ingham Circuit Court
LC No. 14-001687-DM

Before: SWARTZLE, P.J., and SAWYER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order granting plaintiff $58,500.00 in attorney fees at the rate of $1,000.00 a month until fully paid. We affirm.

## I. FACTS

Plaintiff and defendant married in 1998 and filed for divorce on May 31, 2014. The parties have two minor children and share joint legal and physical custody. In relevant part, both parties sought attorney fees from each other: defendant sought $45,500.00 in attorney fees and plaintiff sought $104,000.00. In a prior appeal, the trial court granted attorney fees to plaintiff with no explanation and failed to make a decision regarding defendant's attorney fees. This Court remanded the matter to the trial court. See *Baker v Baker*, unpublished per curiam opinion of the Court of Appeals, issued January 12, 2017 (Docket No. 329466). On remand, the successor judge held an evidentiary hearing and took testimony from the parties and from an expert witness.

Plaintiff testified that in 2014 she filed a tax return, but she was not employed as a W-2 employee between 2003 and 2014 because she was a stay-at-home mother. During the marriage, plaintiff ran a rare breed horse business, which was closed down in December 2015. Plaintiff testified that although the horse business made a minimal profit one year, it was mainly a hobby that was set up as a write-off business to offset defendant's large income. Defendant agreed that the horse business was a money-draining hobby and identified it as a cause of the breakdown of the parties' marriage. Nevertheless, a significant issue in the instant appeal is the effort defendant made to obtain information from plaintiff about income from the horse business. Plaintiff admitted that she had failed to list frozen semen from the business as an asset, which defendant estimated was valued at $100,000.00; however, the Judgment of Divorce resolved that issue by awarding half of the semen to each party.

-1-

Plaintiff gained employment at Michigan State University as a secretary, making $43,000.00. Plaintiff testified that she incurred a total of $120,949.71 in attorney fees, but she received a discount of $11,075.16 for paying her bill in full by a certain date. In order to pay off the bill and make payments on her home, plaintiff stated that she had to borrow substantial amounts of money from others and liquidate assets at a loss. Plaintiff testified that she was deposed a total of five times throughout the divorce action, and she spent three days in mediation. However, defendant contended that plaintiff herself drove up costs by failing to produce necessary documents. Defendant particularly cited plaintiff's failure to bring certain documents pertaining to her income to multiple depositions, although the notice defendant mailed for at least one of those depositions did not provide the full 28 days' notice required by law.

Attorney Robin Omer provided expert testimony regarding reasonableness of attorney fees. Using the 2014 Economics of Law Practice Attorney Income and Billing Rate Summary report prepared by the State Bar of Michigan[1] and his general knowledge of attorney fee rates in Ingham County, Omer testified that the $275 an hour rate charged by defendant's counsel was conservative given his experience and expertise. Omer indicated that an average hourly rate for someone like defendant's counsel would be $300. In contrast, Omer opined that plaintiff's attorney's rate of $335 an hour was excessive. Omer continued by stating that the total fees incurred by both sides are far beyond what he usually sees in divorce cases. Regarding the reasonableness of five depositions, Omer testified that he has not conducted five depositions in an average divorce case in the last few years.

The trial court ultimately concluded that it was unreasonable for defendant to continue pursuing information about plaintiff's income for the purpose of attorney fees. In particular, the trial court indicated that even with the excessive depositions and mediation, the case should have been resolved with 250 hours of attorney work at a rate of $300 an hour. The trial court awarded plaintiff $52,500.00 in attorney fees, and additionally sanctioned defendant $6,000.00 in favor of plaintiff for misconduct that caused plaintiff to incur unnecessary attorney fees. This appeal followed.

## II. STANDARD OF REVIEW

Under the "American rule," attorney fees are by default not recoverable unless a specific legal exception to the rule has been created by statute, court rule, or common law. *Nemeth v Abonmarche Dev, Inc*, 457 Mich 16, 37-38; 576 NW2d 641 (1998). Consequently, whether attorney fees can be awarded is a question of law, which this Court reviews de novo. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206(C)." *Id*. at 164. However, "attorney fees are not recoverable as of right," but rather only if "a party needs financial assistance to prosecute or defend the suit" or the fees were "incurred because of misconduct." *Id*. at 164-165. Fees are awarded based on their relative reasonableness and not total fees incurred. *Smith v Khouri*, 481 Mich 519, 528; 751 NW2d 472 (2008). The burden of

---

[1] Available online at https://www.michbar.org/file/pmrc/articles/0000151.pdf

proving reasonableness falls on the party requesting attorney fees. *Id*. at 529. Otherwise, this Court reviews for clear error any factual findings upon which a trial court bases an award of attorney fees, and this Court reviews for an abuse of discretion the award itself. *Id*. "An abuse of discretion occurs when the decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons,* 477 Mich 8, 12; 727 NW2d 132 (2007).

## III. AWARD OF ATTORNEY FEES

Our Supreme Court has stated that numerous factors should be considered when determining the reasonableness of attorney fees. See *Smith*, 481 Mich at 529-530. The trial court did not make explicit findings regarding all of those factors. However, the majority of those factors are also not disputed by the parties. Defendant contends only that plaintiff failed to provide proof that she needed the attorney fees or that the amount was reasonable. Defendant concludes that the trial court therefore abused its discretion by imposing attorney fees with inadequate evidentiary support. We disagree.

When establishing the reasonableness of a fee, the court must begin by determining the fee customarily charged in the locality for similar legal services. *Smith*, 481 Mich at 530. Defendant is technically correct that plaintiff did not provide evidence regarding the reasonableness of her attorney's fees. However, defendant's own expert witness did provide sufficient evidence on the issue. Defendant cannot reasonably contend that the trial court abused its discretion by relying on his own expert. Neither party challenges Omer's expert qualifications. Omer provided competent testimony backed by external evidence from which the trial court could properly conclude that plaintiff's attorney's rate of $335 an hour was unreasonable, but that an hourly rate of $300 would be reasonable. The fact that plaintiff did not personally submit the evidence upon which the trial court relied does not invalidate the trial court's findings. Consequently, plaintiff's total bill would be discounted by $35 an hour for the reported 333.7 hours spent on this case, thus reducing the total bill by $11,679.60. Other factors aside, plaintiff's total incurred attorney fees would therefore be $109,270.21.

The next factor in determining reasonableness of fees is deciding the reasonableness of hours expended by counsel. *Smith*, 481 Mich at 531. Plaintiff was billed for 333.7 hours of work, while defendant was billed for 290.65 hours of work. Defendant does not contest the accuracy of time expended by plaintiff's attorney. Omer opined that he did not believe plaintiff's billed hours were unreasonable. The 43.05 hour discrepancy between parties' billing hours is not sufficient to disprove reasonability of hours expended. The evidence supported a finding that the hours billed were reasonable and that $109,270.21 is the "base number." *Smith*, 481 Mich at 533.

Various other factors to be considered include the difficulty of the case, the amount involved, and the results obtained. *Smith*, 481 Mich at 529-530. We conclude that this case should not have been very difficult. The trial court observed that both parties had "quickly" settled child custody and parenting time issues during mediation. Aside from credit card debt and attorney fees, the majority of the case had been decided by January of 2015. Given the relative difficulty of the case at that point, the base number of $109,270.21 for determining all attorney fee calculations does not change. The trial court determined that this case "should have been resolved reasonably with 250 hours of attorney time at the rate of $300 per hour or for

$75,000.00". Although it is not clear how the trial court arrived at 250 hours, the trial court explained that based on plaintiff's total recovery, "[e]ven a standard contingency fee would have justified no more than a $78,666 fee." Because neither party challenges the determination that 250 hours was a reasonable amount of time to expend on this case, we conclude that the trial court properly computed a reasonable "base number" of $75,000.00.

Finally, plaintiff is fully employed at Michigan State University and earns $43,680.00 a year. In addition, she receives $700 a month in spousal support. Thus, plaintiff's total yearly income is $52,080.00. Defendant earns $132,500 a year while paying $700 a month in spousal support. Thus, defendant's total yearly income is $124,100.00. Consequently, from their combined total income of $176,180.00, defendant receives just over 70% and plaintiff receives just under 30%. Plaintiff is therefore in a more difficult financial posture to bear the expenses of the litigation. Pursuant to MCR 3.206(C)(2)(a), defendant is obligated to pay a portion of the fees incurred by plaintiff. We find no clear error in the trial court's determination that defendant should pay 70% of plaintiff's reasonable attorney fees, or $52,500.00, which the trial court correctly observed "is a pro rata share based on their respective incomes."

## IV. AWARD OF SANCTIONS

Next, defendant argues that the trial court clearly erred when it sanctioned defendant an additional $6,000.00 in attorney fees, which he asserts was for complying with the trial court's order for continued mediations and depositions of plaintiff. Although the trial court's order is not completely clear, we disagree.

A trial court may award fees based on unreasonable conduct of a party. *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992). However, the court must find a causal connection between the misconduct of a party and fees incurred, and that fees incurred were reasonable. *Reed*, 265 Mich App at 164.

First, we find no error in the trial court's conclusion that defendant engaged in "misconduct" that caused plaintiff to incur unnecessary attorney fees. The trial court's sanction was premised on defendant's pursuit of "the attorney fee issue" based on plaintiff's defunct horse business. Specifically, defendant contended that plaintiff had a large, undisclosed and actively concealed, income from the horse business that should have been used to calculate child support, spousal support, and to pay defendant's attorney fees. However, the record supports the trial court's finding that the horse business was essentially a money-wasting hobby and of no consequence whatsoever to plaintiff's ability to earn an income. Furthermore, plaintiff explained that the business was closed by the end of 2015. We find no clear error in the trial court's finding that considerable unnecessary "expenses were generated as a result of [defendant's] fixation on an income stream that was illusory." The trial court was permitted to impose a sanction of attorney fees for defendant's unreasonable conduct. *Stackhouse*, 193 Mich App at 445.

Defendant raises essentially meritless challenges. First, defendant argues that he had merely been following the trial court's orders when he participated in two days of mediation. Although the trial court observed that "[i]t was not reasonable to have four days of mediation," it stated that the sanction was specifically for unnecessary depositions. Consequently, whether

-4-

defendant was indeed following orders in attending some of the mediation is of minor consequence, especially because the gravamen of the trial court's ruling was that defendant's *entire* pursuit of plaintiff's horse business was unreasonable. Furthermore, the trial court correctly observed that defendant's document production request for the depositions violated notice requirements[2]. Because the requested documents also pertained largely to the horse business, the trial court did not clearly err in finding them irrelevant to the fundamental issue of determining plaintiff's ability to earn income.

Second, defendant argues that the court used the wrong "base" amount of attorney fees paid by plaintiff, noting that she received a deduction from her attorney. However, plaintiff received the deduction for paying early, not because her attorney decided to waive the costs of certain services. Significantly, plaintiff testified that she was required to obtain loans and liquidate assets at a loss in order to satisfy her attorney's bill. Furthermore, defendant's argument fails to take into account the "time value of money," which "refers to the concept that a dollar received today is worth more than a dollar to be received in the future." *Perry Drug Stores, Inc v Dep't of Treasury*, 229 Mich App 453, 458 n 4; 582 NW2d 533 (1998). Finally, the trial court drew a causal connection between the $6,000.00 and specific misconduct committed by defendant. That ultimately meets the criteria set forth in *Stackhouse* to warrant discretionary sanctioning, and thus making the deduction for total attorney fees a red herring.

As noted, the trial court's order is partially ambiguous. It specifically stated that it was intended to compensate plaintiff for unnecessary depositions. However, it also expressed concern that the case had been essentially resolved by January 19, 2015, and plaintiff incurred an additional "74 hours of attorney fees" *after* that date due to defendant "chasing the attorney fee rabbit". All of those depositions were conducted during 2014. Furthermore, we have been unable to determine from the record how the trial court arrived at the specific figure of 74 hours.

Nevertheless, we affirm. The trial court awarded a sanction for 20 hours, which we do not believe to be an abuse of discretion and makes the figure of 74 hours irrelevant. Furthermore, we conclude that the trial court could reasonably have awarded sanctions either for unnecessary depositions or for unnecessary costs addressing "the attorney fee rabbit" after January of 2015. Because either circumstance would have been proper, we find no reason to remand to the trial court for clarification. Because the trial court did not clearly err in deeming defendant's pursuit of plaintiff's illusory income from the horse business to constitute misconduct that caused plaintiff to incur unnecessary attorney fees and we find no reason why a

---

[2] See MCR 3.206.

sanction based on 20 hours is unreasonable, we find no abuse of discretion in the trial court's sanction.

## V. CONCLUSION

Affirmed. Plaintiff, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Amy Ronayne Krause